**United States District Court, Northern District of Illinois**

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 1 C 50140 | DATE | 9/30/2004 |
| CASE TITLE | Carol Sanches vs. Lorden Distributing Co. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion for summary judgment [28-1] is granted. Plaintiff's motion to dismiss [39-1] with prejudice three of the six counts in her complaint is granted. Defendant's motion to strike plaintiff' response to the Local Rule 56.1 statement [44-1] is denied as moot. This case is hereby terminated. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 30 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 49 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL SANCHES, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) | No. 01 C 50140 |
| LORDEN DISTRIBUTING CO., | ) ) | Judge Wayne R. Andersen |
| Defendants. | ) ) | |

DOCKETED SEP 30 2004

## MEMORANDUM, OPINION AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff Carol Sanches filed a complaint against defendant Lorden Distributing Company alleging violations of Title VII of the Civil Rights Act 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* For the following reasons, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff Carol Sanches was an employee of the Lorden Distributing Company ("Lorden") from 1977 to 2001. Lorden is a closely held, family business operating out of Rockford, Illinois. Sanches began as a bookkeeper and was later given additional responsibilities as office manager, financial officer, and administrator. On January 21, 2000, Sanches went home sick from work and never returned. In the months that followed, Lorden made repeated attempts to keep in contact with her. On February 23 and June 14, 2000, Lorden's General Manager, Mike LaLoggia, wrote Sanches asking for information on her medical status. On August 11, 2000, LaLoggia

1

49

wrote Sanches to inform her that, given the open-ended nature of her absence, Lorden had hired an individual to assume her duties. The letter expressly stated that plaintiff's employment was not terminated. Lorden claims that Sanches ignored its requests for information.

On January 25, 2001, LaLoggia sent plaintiff a final letter informing her that, due to her extended absence from work for one year, the company deemed her to have voluntarily resigned. Lorden's employment manual provides that any employee absent for a period of one year, regardless of the reason, is deemed to have resigned.

In her complaint, Sanches argues that she was fired and was the target of a campaign to force her to resign. Company president Thomas Lorden had asked Sanches to train and assist his two sons, Tommy and Danny Lorden, when they started working for the company in 1997. Both men allegedly resisted her efforts to train them and over the course of the next two years, allegedly made her working environment intolerable. Sanches complains of being given excessive job duties that she alleges were not given to similarly situated male employees. She alleges that Tommy Lorden secretly tracked her performance, including her attendance, vacation days, and personal calls, in an effort to affect her performance evaluations and ultimately to undermine her position with the company.

On or about August 4, 2000, Sanches filed a claim with the Equal Employment Opportunity Commission ("EEOC"), charging defendant with retaliation and gender and age discrimination under Title VII and the ADEA. On January 31, 2001, the EEOC dismissed plaintiff's claims and issued a Notice of Right to Sue. Sanches then filed this lawsuit.

On February 18, 2004, Lorden filed a motion for summary judgment. In her response,

Sanches moved to dismiss with prejudice three of the six counts in her lawsuit, including Count II (age discrimination), Count IV (breach of employment contract), and Count V (ERISA retaliation). We grant Sanches' motion. Lorden's motion for summary judgment on Count I (gender discrimination), Count III (retaliation), and Count VI (ERISA breach of contract) is granted for the reasons set forth below.

## DISCUSSION

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We apply this standard with particular care in employment discrimination cases in which intent and credibility are critical. *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997). Nevertheless, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A party must present "more than a scintilla of evidence" to defeat summary judgment. *Senner*, 113 F.3d at 757.

Indeed, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983). Conclusory allegations alone will not defeat a motion for summary judgment. *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893-94 (7th Cir. 2003),

citing *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888-89 (1990). "Speculation does not create a genuine issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 932 (7th Cir. 1995) (emphasis added). The fact-intensive nature of employment discrimination cases does not oblige the court to "scour the record" for factual disputes to help a plaintiff avert summary judgment. *Greer v. Bd. of Ed. of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001).

## II. Plaintiff Cannot Maintain a Gender Discrimination Claim

Count I of plaintiff's complaint alleges gender discrimination under Title VII. Title VII prohibits employers from "discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging gender discrimination under Title VII can prove her claim either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden shifting method established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Schaffner v. Glencoe Park Dist.,* 256 F.3d 616, 620 (7th Cir. 2001).

Plaintiff has failed to produce any direct evidence of gender discrimination. Under the direct evidence method, plaintiff would essentially need an admission by the decision-maker that he was discriminating against the plaintiff on the basis of gender. *Markel v. Board of Regents of the Univ. of Wis.,* 276 F.3d 906, 910 (7th Cir. 2002). Defendants have steadfastly rejected any assertion that its decisions were made based on Sanches' gender. Thus, we proceed under the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, plaintiff must first establish that (1) she was a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to adverse employment actions; and (4) she was treated differently than similarly situated persons outside of the protected class. *Rhodes v. Illinois DOT*, 359 F.3d 498, 504 (7th Cir. 2004). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996). If the employer provides a legitimate, non-discriminatory reason, then plaintiff must show by a preponderance of the evidence that the employer's stated reason for its decision is nothing more than pretext. *Id.*

Sanches, by the mere fact that she is a woman, is a member of a protected class under Title VII. *King v. Board of Regents of Univ. of Wisconsin System*, 898 F.2d 533, 538 (1990). However, she is unable to establish the other three elements required under *McDonnell Douglas*. First, plaintiff was not performing at a level that met the company's legitimate expectations. She admitted at her deposition that her 1998 and 1999 performance reviews were substandard. Her 1999 performance rating was below 1.0, the required score for adequate performance on the company's rating scale. Plaintiff's supervisors allegedly received complaints regarding her performance. Other employees report she was condescending and was reluctant and impatient when training new employees. She allegedly failed to keep up with her job duties and follow directives, and had a poor attendance record.

In response, plaintiff argues that the "surreptitious monitoring" of her performance was

motivated by the company's desire to force her to resign. She focuses on her belief that she was singled out by top management, when other similarly situated male employees were not. But she fails to refute Lorden's assertions that she, in fact, was adequately performing her duties. Thus, we conclude that, despite years of satisfactory performance and promotions, during the period in question, plaintiff was not meeting the legitimate expectations of the company.

Second, plaintiff cannot establish that she suffered an adverse employment action. An adverse employment action is one that is materially adverse, "meaning more than a mere inconvenience or an alteration of job responsibilities." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001). The Seventh Circuit has offered examples of adverse employment actions, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (2002).

In her complaint, plaintiff alleges that she suffered an adverse employment action when she was fired from her job. Under the company rules, however, plaintiff is deemed to have voluntarily resigned. Alternatively, plaintiff has alleged that she was constructively discharged. In her response to defendant's motion for summary judgment, she argued that conditions at Lorden were intolerable and she essentially was forced to resign. It is well established that the plaintiff cannot amend her complaint through arguments in a brief opposing a summary judgment motion. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). But even if she were permitted to advance this theory, her descriptions of the working environment at Lorden fail to meet the required standard for constructive discharge.

To establish a theory of constructive discharge, plaintiff must show that her working conditions were "unbearable." *EEOC v. University of Chicago Hosp.*, 276 F.3d 326, 331-32 (7th Cir. 2002). The Seventh Circuit has held that the work environment must be more egregious than that of a hostile work environment. *Id.* In her complaint, plaintiff maintains that she was not given appropriate authority and support to successfully perform her job duties of training Tommy and Danny Lorden and was intentionally assigned additional, excessive job duties, which made it impossible for her to succeed. These claims fail to meet the legal standard required to succeed on a theory of constructive discharge. As the Seventh Circuit has noted, "not everything that makes an employee unhappy is an actionable adverse action." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (2002).

Third, plaintiff cannot establish that she was treated differently than similarly situated male employees. She alleges that other male employees, primarily Tommy and Danny Lorden, were not subjected to a "prolonged campaign of negative scrutiny." To be similarly situated to another employee, a plaintiff must show that the employee is directly comparable in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). We must also consider other "differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

In this case, Tommy and Danny Lorden are not similarly situated male employees. As shareholders of the firm, they were favored by their father, the company president, based on lineage, not gender. As part owners, Tommy and Danny Lorden cannot be directly comparable

7

in all material respects to non-equity employees, even to senior managers like Sanches. In addition to Tony and Danny Lorden, plaintiff makes a vague reference to being similarly situated to the operations and sales managers, who she asserts were not subject to the same "specter of harassment." These assertions are not sufficiently detailed. She fails to demonstrate how similarly situated male employees, if there are such employees, were treated differently. Thus, plaintiff fails to establish a prima facie case of gender discrimination under *McDonnell Douglas*.

Even if plaintiff were able to establish a prima facie case, defendant would be able to meet its burden of articulating a legitimate, nondiscriminatory reason for its allegedly biased conduct. Defendant has offered legitimate business reasons for its actions with respect to plaintiff's employment, including being assigned the additional duties of training Tommy and Danny Lorden. Moreover, a woman was hired to replace Sanches as Director of Finance and Administration. We agree with defendants that plaintiff has failed to prove she was discriminated against based on gender.

### III.     Plaintiff Cannot Maintain a Retaliation Claim

In Count III, plaintiff alleges retaliation under Title VII. Title VII prohibits retaliation against an employee who has engaged in activity protected under the Act. 42 U.S.C. § 2000e-3(a). Section 2000e-3(a) states that "it shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because [they have] opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff can prove her retaliation claim in one of two ways. First, she may "present direct evidence that she engaged in protected activity . . . and as a result suffered the adverse

8

employment action of which she complains." *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 643-44 (7th Cir. 2002). Second, if the plaintiff cannot prove direct evidence of retaliation, she can prevail under an adaptation of *McDonnell Douglas* by showing that after engaging in protected activity, she was subject to an adverse employment action even though she was performing her job in a satisfactory manner. *Id.*

Plaintiff has failed to establish a retaliation claim under either the direct or indirect methods. She cites, however, two incidents as grounds for proving retaliation under the indirect method. First, she alleges Tommy Lorden orchestrated a campaign to force her to resign in retaliation for having reported to his father that Tommy had raised his voice and cursed at plaintiff in August 1998. Reporting such an incident is not a protected activity under Title VII. Accordingly, this claim must fail.

Second, plaintiff believes she was terminated for having opposed and investigated the company's denial of medical leave benefits to a female co-worker. In her EEOC complaint, she argued that the company was providing medical leave benefits to male employees only, which she asserted was gender discrimination under Title VII. In the Court's discussion of plaintiff's own gender discrimination claim above, however, we outlined plaintiff's failure to meet the legal standard for constructive discharge, and ruled that the actions that were taken by defendants failed to rise to the level of materially adverse employment actions. Thus, without a showing of adverse employment action, we reject plaintiff's retaliation claim under *McDonnell Douglas*.

IV.     **Plaintiff Cannot Maintain an ERISA Claim**

In Count VI, plaintiff asserts that she was discharged for the purpose of preventing her

9

from vesting in the company's retirement plan. Plaintiff was, in fact, a participant in Lorden's Supplemental Executive Retirement Plan (SERP), which is a deferred employee benefit plan under ERISA. 29 U.S.C. § 1002(2). Sanches was scheduled to vest in December 2006. Under Section 510 of ERISA, it is unlawful for any person to discharge a participant or beneficiary of an employee benefit plan for the purpose of interfering with the attainment of any right to which the participant may become entitled. 29 U.S.C. § 1140.

To establish an ERISA retaliation claim, however, the Seventh Circuit has held that the claimant must demonstrate that the employer had the specific intent to interfere with the employee's ERISA rights. *Bilow v. Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C.*, 277 F.3d 882, 892 (7th Cir. 2001). Plaintiff has failed to provide any evidence that defendant had the specific intent to deprive her of the SERP benefits. Her assertions are conjecture. There is no persuasive evidence that Lorden discharged the plaintiff in January 2001 to prevent her benefits from vesting in December 2006.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [28-1] is granted. Plaintiff's motion to dismiss with prejudice three of the six counts in her complaint [39-1] is granted. Defendant's motion to strike plaintiff's response to the Local Rule 56.1 statement [44-1] is denied as moot. This case is hereby terminated. This is a final and appealable order. It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 30, 2004

10